IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICHOLAS MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-304-HE |
| | ) |
| CITY OF OKLAHOMA CITY, | ) Attorney's Lien Claimed |
| | ) Jury Trial Demanded |
| Defendant. | ) |

## FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiff Nicholas Martin and, for his causes of action against Defendant City of Oklahoma City, alleges and states as follows:

### The Parties

1. Plaintiff Nicholas Martin ("Martin") is and at all relevant times has been a citizen of the State of Oklahoma and a resident of the Western District of Oklahoma.

2. Defendant City of Oklahoma City ("City") is and at all relevant times has been a municipal corporation organized under the laws of the State of Oklahoma. City's principal place of business and operation is located within the Western District of Oklahoma.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over Martin's federal law claims pursuant to 28 U.S.C. § 1331, as his claims arise under federal law, *i.e.* the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 *et seq.*

1

4. This Court has personal jurisdiction over Defendant City because it is a municipal corporation organized under the laws of the State of Oklahoma.

5. Venue is proper in this Court because all or part of Martin's causes of action arose within this judicial district.

Factual Allegations

6. Martin is a mixed race African American.

7. Martin applied to the City of Oklahoma City Fire Department in or around 2017.

8. At the time of his application, Martin was a licensed emergency medical technician in the State of Oklahoma. Martin has had the professional goal and aspiration to become a firefighter since at least the age of fifteen (15). Martin has worked diligently to become a firefighter in the Oklahoma City metropolitan area.

9. In or around 2017, Defendant City hired Martin as a probationary firefighter. Martin attended a twenty-one (21) week fire academy, which he successfully completed.

10. Following his successful completion of the fire academy, Martin was assigned to Station 9 located at S.W. 89th and Pennsylvania Avenue in Oklahoma City in or around November 2018.

11. Martin would come to learn that Station 9 was widely referred to as the "Rugrat Station."

12. Martin would come to learn that Station 9 was referred to as the "Rugrat Station" because it lacked sufficient and appropriate leadership.

13. Martin's first day at Station 9 was on November 8, 2018.

14. On November 8, 2018, Dowdy singled Martin out with the following abusive and hostile conduct:

   a. Dowdy pulled Martin aside and said words to the effect of, "I don't like you" and "We don't want you here."

   b. Dowdy and/or Corporal Brandon Jones took an embarrassing photograph of Martin and sent it to other firefighters assigned to various stations around Oklahoma City.

   c. While Martin was taking a shower, Dowdy and Corporal Brandon Jones snuck into the bathroom, turned out the lights, tossed a lit firecracker in the corner, and threw an entire bag of flour on Martin. The flour got into Martin's eyes and nose, as well as covering his entire body. Later in the evening, Dowdy said words to the effect of, Martin would now be completely white.

15. In late November and December 2018, Dowdy and Jones began to make blatantly racial comments. For example, Dowdy began calling Martin a "Half-rican" and using the word "n*gger" in Martin's presence.

16. Dowdy called Martin a "Half-rican" so frequently, both to Martin's face and behind his back, that other firefighters started to say this to Martin. The usage of this word continued throughout 2019. For example, in or around September 2019, Firefighter Pipkins called Martin a "Half-rican." Pipkins said that Dowdy frequently referred to Martin as a "Half-rican."

17. Martin objected both to Dowdy, Jones, and Pipkins, but his protestations had no impact on Dowdy or Jones. Pipkins apologized and did not use the offensive term again.

18. In addition to the word "Half-rican," Dowdy and Jones would call Martin a "mutt," a "fat ass," and "lazy," both to his face and behind his back. Dowdy and Jones would "moo" when Martine at at the station kitchen.

19. In January 2019, Martin reported Dowdy and Jones' conduct to Major Tony Baird, including the racial comments and other racially-neutral harassment. Martin went into Major Baird's office, shut the door, and reported the conduct. Major Baird stated that he would take care of the problem.

20. Contrary to his statements, Major Baird did not resolve the problem. Upon information and belief, Major Baird did not create any written documentation of the report, did not submit the complaint up the chain of command or to human resources, and did not speak to or discipline Dowdy or Jones in any meaningful manner, if at all.

21. In April 2019, Martin, Dowdy, and Corporal Iago were together on a fire call. Martin was using the fire pump for the first time, and he ended up with water on his uniform. Sgt. Iago said words to the effect of, "Did you not have water on the plantation?"

22. Dowdy found this comment to be extremely funny, and repeatedly made comments to Martin about being on the plantation and being in a slave house over the rest of the day and the next few days.

23. Martin did not encourage or welcome these comments, and in fact Martin objected to them.

24. The day after Sgt. Iago made these comments, Sgt. Iago apologized in person. Sgt. Iago tried to walk back his comments and say he meant to say, did you not have water on the commune?

25. Dowdy did not apologize but instead continued to make comments about Martin coming from a plantation.

26.   In May 2019, Martin was injured in an automobile accident. He was off work for a month and hospitalized. However, none of the members of Station 9 came to see him in the hospital, offered to mow his yard, or help out in any way. This failure spoke volumes to Martin because firefighters, like other first responders and law enforcement officers, coalesce as a family around colleagues who are injured by providing professional and personal support and encouragement.

27.   In June 2019, Martin was loaned to Chief Station (Station 25). Martin had a private conversation with a lieutenant at this station. The lieutenant told Martin that putting in a transfer slip would be really bad for his career. The lieutenant stated he would speak to Chief Russell Huffman to try and help get Martin moved. Upon information and belief, this never occurred.

28.   In July 2019, Martin and Dowdy were working out at 10Gym in Oklahoma City. Randomly, Dowdy said to Martin words to the effect of, "You're not my friend" and "I don't like working with you, you should put in a transfer slip."

29.   A few days after this incident, Martin was preparing the volleyball court by raking the court, removing the weeds, and watering down the sand. Dowdy watched while he was on a personal business call. Dowdy came by and said, "just keep on doing that bitch work." Martin objected and stated that Dowdy should help, rather than conduct personal business on city time. Dowdy exploded and said, "You shouldn't be talking shit" because Martin's reputation was "shit" and Martin was "fat and lazy."

30. After this incident, Martin went to Major Baird's office, shut the door, and discussed all of these issues again. Once again, Major Baird stated that he would take care of the problem.

31. Upon information and belief, Major Baird did not create any written documentation of the report and did not submit the complaint up the chain of command or to human resources.

32. In August 2019, Dowdy apologized to Martin and said he treated him badly because of Martin's physical fitness. The workplace environment improved for a short period of time.

33. However, Dowdy and Jones quickly began escalating their conduct again, including making the racial comments and other racially-neutral abusive comments as described above.

34. In September 2019, another firefighter at the rank of sergeant came to Station 9. When he was assigned to Station 9, he approached Martin and said it seemed like Dowdy was "always singling you out." Martin confided in the sergeant and said it "makes me feel like sh*t," "makes me unhappy to be here." The sergeant apparently spoke to Dowdy and told Dowdy to lay off.

35. In October 2019, Dowdy told Martin to rub jalapeno juice in a new recruit's underwear. Martin refused. Dowdy said if Martin wouldn't do it, then Dowdy would rub the jalapeno juice in Martins' underwear.

36. Later in October 2019, there was a station get together at Dowdy's house. Dowdy asked Martin to come look at his sheep. Dowdy, Martin, and Major Baird were looking at the

sheep when Dowdy said words to the effect of, "The only way I can get my sheep to come up to me, is if I say 'n*gger.'" Martin said, "What the hell are you talking about?" Dowdy responded and started saying "n*gger" as if he were "bashing" at the sheep. Major Baird did not step in and stop the conduct.

37. In November 2019, on the anniversary of the death of Martin's grandmother, Dowdy came into Martin's room, yelled at Martin, calling him lazy, and threw a lit firework in Martin's face.

38. Defendant City's failure to take appropriate correct action allowed the situation to escalate to physical violence.

39. On November 12, 2019, Martin was in the station taking a shower. Dowdy and Jones entered the shower. Dowdy had a lit firecracker in his hand and it was pointed directly at Martin's face. Initially, Martin believed the firecracker was a sparkler, but he quickly realized it was a Roman candle.

40. A Roman candle is a firework that ejects exploding shells.

41. Martin grabbed his towel and began waiving it at Dowdy and Jones. Dowdy lowered the Roman candle towards Martin's genitals, and the firecracker ejected several exploding shells, directly contacting Martin in the genitals.

42. The pain caused Martin to fall to the ground. Dowdy and Jones were laughing audibly, and Martin yelled out, telling them to get out. Martin suffered physical injuries in the form of minor burns and swelling.

43. The next day, Martin was "on loan" to a different location, Station 25. This arrangement pre-dated the physical assault on November 12.

44. When Martin arrived at Station 25, other firefighters began talking to him about the physical assault from the day before. Martin quickly learned that Jones had filmed the entire attack on his iPhone.

45. Martin later watched the video. Jones, who filmed the attack, laughed so hard the camera was shaking.

46. On November 14, Martin reported the incident outside of his direct chain of command, to Major Mark Sandoval. Martin explained all of the hostile conduct to Major Sandoval.

47. Chief Russell Huffman and Chief Michael Walker subsequently began an investigation into Martin's complaints of discrimination and sexual harassment.

48. Upon information and belief, Dowdy was placed on administrative leave with pay as a result of Martin's report.

49. Martin requested that he be put on administrative leave with pay in order to seek treatment for the mental and emotional distress caused by Dowdy and Jones and caused by the City's decision to allow the hostile work environment to continually get worse.

50. Martin left the state to receive treatment, but at the time Martin left he did not know if he would be receiving any pay or not.

51. Fire Chief Richard Kelley would later grant the request for Martin to go on administrative leave with pay, but he made comments indicating that he was not happy with Martin for his request.

52. When Martin returned from out-of-state, Deputy Fire Chief Walker directed that Martin come to his office to discuss potential disciplinary action ***against Martin.***

53. Martin had taken no actions whatsoever to justify the imposition of any discipline against him.

54. In March, 2020, Martin received a letter from Fire Chief Kelley indicating that his allegations of discrimination and sexual harassment had been sustained. Kelley did not tell Martin what consequences, if any, have been imposed as a result of his complaint.

55. Fire Chief Kelley recently told Martin that he would be taken off administrative leave with pay and that he would be forced to use his sick leave, despite the fact that the City is responsible for the damages that Martin has suffered.

### FIRST CAUSE OF ACTION — VIOLATION OF 42 U.S.C. § 1981 — HOSTILE WORK ENVIRONMENT BASED UPON RACE

56. Martin incorporates by reference the above and foregoing allegations as though set forth in full herein.

57. Martin was subjected to conduct by co-workers consisting of harassment, inappropriate comments, and physical violence.

58. Such conduct was unwelcome, hostile, and abusive.

59. Such conduct was based on Martin's race.

60. Such conduct was sufficiently severe or pervasive that a reasonable person in Martin's position would find the work environment to be hostile or abusive.

61. At the time such conduct occurred and as a result of such conduct, Martin believed his work environment to be hostile or abusive.

62. Defendant City knew or should have known of the conduct.

63. Defendant City failed to take prompt and appropriate corrective action to end the conduct.

64. As a direct and proximate result of the conduct, Martin has suffered damages, including mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff Nicholas Martin prays for judgment against Defendant City of Oklahoma City as follows:

**(1)** For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

**(2)** For attorney's fees and costs as authorized by law;

**(3)** For pre-judgment and post-judgment interest;

**(4)** For any and all equitable relief, including any mandatory or prohibitory injunctions, as necessary to make Plaintiff whole;

**(5)** For any and all further relief as the Court or jury determines is just and proper.

### SECOND CAUSE OF ACTION — VIOLATION OF TITLE VII — HOSTILE WORK ENVIRONMENT BASED UPON RACE

65. Martin incorporates by reference the above and foregoing allegations as though set forth in full herein.

66. Martin filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission within three-hundred (300) days of one or more of the events giving rise to his hostile work environment claim.

67. The EEOC has issued a Notice of Suit Rights authorizing Martin to commence this action under Title VII of the Civil Rights Act of 1964, as amended. Martin has asserted this claim within ninety (90) days of the issuance of the Notice of Suit Rights.

68. Martin has exhausted his administrative remedies under Title VII.

69. Martin was subjected to conduct by co-workers consisting of harassment, inappropriate comments, and physical violence.

70. Such conduct was unwelcome, hostile, and abusive.

71. Such conduct was based on Martin's race.

72. Such conduct was sufficiently severe or pervasive that a reasonable person in Martin's position would find the work environment to be hostile or abusive.

73. At the time such conduct occurred and as a result of such conduct, Martin believed his work environment to be hostile or abusive.

74. Defendant City knew or should have known of the conduct.

75. Defendant City failed to take prompt and appropriate corrective action to end the conduct.

76. As a direct and proximate result of the conduct, Martin has suffered damages, including mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff Nicholas Martin prays for judgment against Defendant City of Oklahoma City as follows:

    **(1)**  For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

    **(2)**  For attorney's fees and costs as authorized by law;

    **(3)**  For pre-judgment and post-judgment interest;

    **(4)**  For any and all equitable relief, including any mandatory or prohibitory injunctions, as necessary to make Plaintiff whole;

    **(5)**  For any and all further relief as the Court or jury determines is just and proper.

Dated this <u>11th</u> day of January, 2021.

                                    Respectfully submitted,

                                    /s/ Barrett T. Bowers
                                  Barrett T. Bowers, OBA#30493
                                  THE BOWERS LAW FIRM
                                  P.O. Box 891628
                                  Oklahoma City, OK 73189
                                  (405) 727-7188
                                  barrett@bowerslawok.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this <u>11th</u> day of January, 2021, a true and correct copy of the above and foregoing document was served on all counsel of record by filing this document with the Court's ECF System.

                                  /s/ Barrett T. Bowers
                                  Barrett T. Bowers